**COMMERCIAL UNION INSURANCE CO., Plaintiff,**

v.

**CANNELTON INDUSTRIES, INC., a West Virginia Corporation, Defendant.**

**ST. PAUL SURPLUS LINES INSURANCE COMPANY and St. Paul Fire and Marine Insurance Company, Plaintiffs,**

v.

**CANNELTON INDUSTRIES, INC., and Algoma Steel Corporation, Limited, Defendants.**

**Nos. 2:92–CV–111, 2:92–CV–162.**

United States District Court,
W.D. Michigan, N.D.

Aug. 3, 1993.

See also 828 F.Supp. 498.

<hr />

Carole D. Bos, Kevin J. O'Dowd, Buchanan & Bos, Grand Rapids, MI, for Commercial Union Ins. Co. in No. 92–CV–111.

Frederick J. Dindoffer, Bodman, Longley & Dahling, Detroit, MI, Gale Reddie Lea, Jackson & Kelly, Charleston, WV, for Cannelton Industries, Inc. in No. 92–CV–111.

Stephen M. Kelley, Elizabeth Anne Downey, Kitch, Saurbier, Drutchas, Wagner & Kenney, Detroit, MI, for St. Paul Surplus Lines Ins. Co. in No. 92–CV–162.

Frederick J. Dindoffer, Bodman, Longley & Dahling, Detroit, MI, Gale Reddie Lea, Jackson & Kelly, Charleston, WV, for Cannelton Industries, Inc. in No. 92–CV–162.

Frederick J. Dindoffer, Lisa M. Panourgias, Bodman, Longley & Dahling, Detroit, MI, for Algoma Steel Corp. Ltd., in No. 92–CV–162.

Frederick J. Dindoffer, Barnett Jay Colvin, Bodman, Longley & Dahling, Detroit, MI, for Algoma Steel, Inc. in No. 92–CV–162.

## OPINION

QUIST, District Judge.

These cases involve disputes over coverage of insurance policies issued, in the first case by plaintiff Commercial Union Insurance Company (Commercial Union) and in the second case by plaintiffs St. Paul Surplus Lines Insurance Company and St. Paul Fire and Marine Insurance Company (collectively, St. Paul), to defendants Cannelton Industries, Inc. (Cannelton) and Algoma Steel Corporation, Limited (Algoma). Plaintiffs filed declaratory judgment actions in this Court to determine whether they were liable for clean-up costs on property located in Sault Ste. Marie, Michigan. Cannelton moved to dismiss both actions for lack of personal jurisdiction and its motions were denied. Now Cannelton seeks discretionary dismissal or stay of the actions. St. Paul has moved for consolidation of the two declaratory judgment actions.

### Background Information

Cannelton owns approximately 75 acres of land in Sault Ste. Marie, Michigan along the St. Mary's River, comprised of the former site of Northwestern Leather Tannery (Northwestern). Cannelton Coal Company acquired the property in 1964 and became Cannelton Industries, Inc. in 1971.

At issue in the coverage dispute is whether plaintiffs are liable for the costs of clean-up of toxic materials on the Sault Ste. Marie site. The materials were deposited on the site prior to the time Cannelton owned the property. The Michigan Department of Natural Resources ("MDNR") tested soil samples from the site in the late 1970's and found high levels of cyanide, chromium, lead, manganese, arsenic, cadmium, and copper. After a series of fires at the site in the 1980's, the EPA added the site to the National Priorities List pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act. ("CERCLA"), 42 U.S.C. § 9601 *et seq.* In 1988 the EPA notified Cannelton that it was a Potentially Responsible Party with respect to environmental contamination on the site and asked it to present a proposal for implementing a Remedial Investigation/Feasibility Study. The EPA issued an Administrative Order by Consent in August 1991, pursuant to § 106 of CERCLA, which Cannelton executed on August 26, 1991. Eleven months later, on July 9, 1992, the EPA released its proposed plan for site clean-up and remediation.

Commercial Union filed a declaratory judgment action in this Court on May 15, 1992, seeking a ruling that it was not liable to Cannelton for costs associated with clean-up of its Sault Ste. Marie property. On July 1, 1992, Cannelton instituted a declaratory judgment action against fifty-seven of its insurance carriers, including St. Paul, in state court in West Virginia. St. Paul filed its declaratory judgment action in this Court on July 13, 1993. St. Paul, and all but one of the responding defendants in the West Virginia action, have also filed a motion in West Virginia seeking to dismiss on grounds of

*forum non conveniens.* The motion to dismiss is still pending in West Virginia and no further actions have been taken in that proceeding.

## Issues Presented

Cannelton urges this Court to dismiss plaintiffs' declaratory judgment actions or, alternatively, to stay the actions pending the outcome of the parallel state court action in West Virginia. St. Paul and Commercial Union have responded in opposition to Cannelton's motion, claiming that it is appropriate for this Court to hear these actions.

## Discussion

The Declaratory Judgment Act gives federal courts discretion over whether they will hear particular cases brought under the Act. It provides: "In a case of actual controversy within its jurisdiction ... any court of the United States ... *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201 (emphasis added).

In *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), the Supreme Court held that a district court is under no compulsion to exercise its jurisdiction under the Declaratory Judgment Act. 316 U.S. at 494, 62 S.Ct. at 1175. The Court sketched the analysis a district court should make in exercising its discretion:

> Where a district court is presented with a claim such as was made here, it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Id.* at 495, 62 S.Ct. at 1176.

St. Paul argues that this Court must also apply the factors of *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In *Colorado River,* the Court held that a federal district court can refuse to exercise its jurisdiction in "exceptional circumstances." 424 U.S. at 813, 96 S.Ct. at 1244. *Colorado River* was decided after *Brillhart* and did not involve discretionary jurisdiction under the Declaratory Judgment Act. In *Insurance Co. of the State of Pennsylvania v. Syntex Corp.,* 964 F.2d 829, 834 (8th Cir.1992), the Eighth Circuit held that *Colorado River* and *Brillhart* must be read together.[1] However, the majority of cases hold that "in declaratory [judgment] actions Congress has afforded the federal courts a freedom not present in ordinary diversity suits to consider the state interest in having state courts determine questions of state law." *Mitcheson v. Harris,* 955 F.2d 235, 238 (4th Cir.1992) (citing *Terra Nova Ins. Co. v. 900 Bar, Inc.,* 887 F.2d 1213, 1222 (3rd Cir.1989)). *See also, Mission Ins. Co. v. Puritan Fashions Corp.,* 706 F.2d 599, 601 n. 1 (5th Cir.1983); *40235 Washington Street Corp. v. Lusardi,* 976 F.2d 587 (9th Cir.1992); *Sinclair Oil Corp. v. Amoco Production Co.,* 982 F.2d 437 (10th Cir.1992). I could not find that the Sixth Circuit has ever addressed the issue of whether *Colorado River* modifies *Brillhart.*

After *Colorado River* was decided, the Sixth Circuit expanded further on the elements to consider in determining whether to entertain a declaratory judgment action. In *Allstate Ins. Co. v. Mercier,* 913 F.2d 273, 277 (6th Cir.1990), the court stated:

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

---

**1.** The court in *Syntex Corp.* held that the *Colorado River* exceptional circumstances test applies to actions brought in federal court under the Declaratory Judgment Act. 964 F.2d at 834.

*Mercier* relied upon *Brillhart* but did not mention *Colorado River*. *Mercier* delineated five factors to consider when determining whether a declaratory ruling is appropriate:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Id.*

The *Mercier* court reiterated that "there is no per se rule against a district court's entertaining a declaratory judgment action to determine an insurer's liability when a tort action is pending against its insured in a state court." *Id.* (citing *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir.1987)). Yet, it noted that " 'declaratory judgment actions ... are seldom helpful in resolving an ongoing action in another court.' " *Id.* at 278 (quoting *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir.1986)). This Court will analyze Cannelton's motions under the factors set forth in *Mercier*.

### Clarify Legal Relations/Settle the Controversy

In *Mercier*, where the related litigation that was pending in state court was an action against the insured in which the insurer was not a party, the court concluded that the first two factors could not be met. *Id.* at 279. It held that a declaratory judgment could not clarify and settle legal relations between the insurer and the insured because the policy exclusions at issue could only be applied after factual questions pending in the state action were resolved. *Id.* It also held that a declaratory judgment would not properly terminate the controversy, "in view of the pauci-

ty of the record." *Id.* In contrast, the parallel state action in this instance is between the insured and its insurers. In no respect is the instant action dependent on developments in the state action.

On the other hand, as Cannelton argues, the first factor cannot be met because declaratory judgments in this Court will not resolve all of the issues in the state case and the plaintiffs in these actions will not have the final word on their liability until Cannelton's claims against the remaining 56 insurers are resolved. In *Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94 (5th Cir.1992), *cert. granted*, —— U.S. ——, 113 S.Ct. 51, 121 L.Ed.2d 21 (1992), *cert. dismissed*, —— U.S. ——, 113 S.Ct. 1836, 123 L.Ed.2d 463 (1993), the insurer first filed a declaratory judgment action in federal court. The insured filed a subsequent action in state court and included two additional parties. Because of the additional parties in the state court action the Fifth Circuit, in affirming the district court's decision to stay the federal action, stated that because the insured added the additional parties, the state action and not the federal action was the forum that would resolve all disputes.

Likewise, in the instant action, if this Court proceeds with this case, Cannelton will be litigating before two courts. The action pending in Michigan will only resolve Cannelton's dispute with Commercial Union and St. Paul. The disputes with the other insurers will not be resolved in this forum. All the different insurers should be before one court. There are many more insurers before the court in West Virginia than there are before this Court. In fact, Commercial Union and St. Paul are also before the West Virginia court. Over 50 of the insurers are not before this federal court. Furthermore, I agree with Cannelton that the interrelationships of the different insurers may be significant in the final resolution of the issue of Cannelton's coverage for the Michigan site.

Commercial Union argues that this Court is the best forum for settling the controversy between the parties because resolution of the coverage dispute will require the testimony of Michigan residents who are not subject to the subpoena power of West Virginia, where-

as the only potential witnesses from West Virginia will be Cannelton employees who would be under the jurisdiction of this Court as party witnesses. Michigan has adopted The Uniform Interstate and International Procedure Act, M.C.L.A. 600.1852, M.S.A. 27A.1852, which establishes a clear procedure for deposing residents of Michigan in actions pending in other states. Likewise, in my judgment, it should be no more expensive to take depositions in an action pending in Michigan than it would be in an action pending in West Virginia. Furthermore, because Cannelton maintains its insurance records in West Virginia, a considerable amount of discovery will have to be conducted in West Virginia.

Commercial Union also asserts that resolution of the issues regarding its policies will clarify and narrow, rather than complicate, the issues remaining in the state suit. I fail to see that this Court presents any advantage in this regard. One forum or the other can and will clarify and narrow the issues.

St. Paul states that its dispute with Cannelton can be adjudicated fully only in this Court because the co-defendant in its declaratory judgment action, Algoma Ltd., is not a party to the West Virginia action and apparently is not subject to personal jurisdiction there but would be subject to personal jurisdiction in this Court. St. Paul included Algoma as a party because it is a named insured on the contaminated property at issue and has been named as a Potentially Responsible Party by the EPA. Cannelton responds that the EPA is not pursuing Algoma as a PRP because the EPA has learned that Algoma has sold the property to Cannelton. This Court will take Cannelton's word on this as Cannelton is the party in the best position to know. Furthermore, if Cannelton is wrong, Cannelton or it subsidiary, Algoma, will bear the harsh consequences.

The West Virginia court may grant the defendants's motion to dismiss. However, as of today it has not done so. Because Cannel-ton's action is still pending in West Virginia, the interests in a full adjudication of the disputes are currently in West Virginia.

### *"Procedural Fencing" or "Forum Shopping"*

In its brief for dismissal, Cannelton stresses the third factor, maintaining that both Commercial Union and St. Paul engaged in procedural fencing. St. Paul filed its action after Cannelton commenced the West Virginia action, and thus, it merits the critical evaluation of later-filed actions conducted in *Brillhart* and many subsequent cases.[2] Commercial Union, however, was the first to file an action related to the dispute. Its action was filed more than six weeks before Cannelton commenced suit in West Virginia. Cannelton claims that Commercial Union should still be branded as a forum shopper because it failed to notify Cannelton of its coverage decision after Cannelton presented its claim and, instead, filed suit without notice while Cannelton awaited word on whether Commercial Union was planning to deny coverage.

Cannelton cites several cases that declined to exercise jurisdiction over declaratory judgment actions that were filed first but were characterized by the courts as examples of the race to the courthouse. *See Tempco Elec. Heater Corp. v. Omega Engineering, Inc.,* 819 F.2d 746 (7th Cir.1987); *Houston General Ins. Co. v. Equitable Life Assur. Soc. of United States,* No. CIV–88–732E, 1989 WL 13473 (W.D.N.Y.1989), *aff'd without opinion,* 888 F.2d 125 (2d Cir.1989); *State Farm Fire and Cas. Co. v. Taylor,* 118 F.R.D. 426 (M.D.N.C.1988); *Hartford Accident & Indem. Co. v. Hop–On Int'l Corp.,* 568 F.Supp. 1569 (S.D.N.Y.1983). The Court notes also *Granite State Ins. Co. v. Tandy Corp.,* 986 F.2d 94 (5th Cir.1993).

The first to file issue was recently addressed by the Ninth Circuit Court of Appeals in *Continental Casualty Co. v. Robsac Industries,* 947 F.2d 1367 (9th Cir.1991). In

---

**2.** St. Paul asserts that when it filed its declaratory judgment action, it was not aware that Cannelton had filed a state court action. Cannelton has documented that notice of intent to sue was sent to St. Paul representatives almost two weeks before St. Paul filed its action and that St. Paul received the West Virginia summons two business days before its declaratory judgment action was filed.

*Robsac*, the Ninth Circuit held that "[w]hether the federal declaratory judgment action regarding insurance coverage is filed first or second, it is reactive, and permitting it to go forward when there is a pending state court case presenting the identical issue would encourage forum shopping in violation of the second *Brillhart* principle." *Id.* at 1372–73. Subsequently, however, the Ninth Circuit held that a district court properly heard a case in which the insurer filed a declaratory judgment action less than a month before the insured filed a state court coverage action. *Aetna Cas. and Sur. Co. v. Merritt*, 974 F.2d 1196, 1199 (9th Cir.1992). Each situation must be judged on its own individual merits.

Cannelton did seek to have the disputes heard at an early stage in West Virginia. Although Cannelton filed its case approximately 45 days after Commercial Union filed, nothing Cannelton did undermined progress that had already been made in this federal Court. However, I believe that all parties are jockeying for strategic position—Cannelton no less or no more than the insurers. In my judgment, the determining factor is that more than 50 insurers are before the court in West Virginia and are not before this Court. If there was a race to the courthouse, Cannelton was the first out of the gate with a comprehensive suit to resolve the question of coverage. Because Commercial Union is the only insurer to have filed before Cannelton and over 50 other insurers are before the West Virginia court, the first to file consideration favors Cannelton.

### Comity and Judicial Administration

The West Virginia state court action is still at an early stage. St. Paul's motion for dismissal on grounds of *forum non conveniens* is still pending and no other actions have been taken. Nor has any meaningful activity occurred before this Court. It seems that all parties are waiting for one or the other of the courts to act.

There is no special federal interest here. Indeed, the insurance industry has sought and gained significant exemptions from federal law so that it could be regulated by state law—i.e., antitrust and bankruptcy exemptions. The issues presented—including the important issue of which state's law applies—are issues of state law. Although West Virginia law may not be used to interpret the policies in question, I do not believe that federal courts have any greater ability to interpret state law than does a state court.

I find it significant that the insured is a West Virginia corporation. All of the insurers sold policies to a West Virginia corporation and must have known that they were subject to suit in West Virginia.

### Better Alternative Remedy

It is appropriate to "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk Western Railroad Company v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir.1984). In this instance, the West Virginia court has expressed concern regarding its ability, given its resources, to move the case expeditiously. It has also expressed concern with the potential need to apply law other than West Virginia law. I do not believe that the state action affords a better forum than could be afforded by this court. However, the West Virginia court has all, or almost all, of the insurers before it. Therefore, the West Virginia court is the court that could provide the best remedy.

### Discretionary Jurisdiction

After considering all of the factors outlined above, I conclude that it is appropriate that I retain these cases only if the West Virginia state court grants the insurers' motion to dismiss. West Virginia's ability to afford a more complete resolution of the coverage disputes is the most important factor in my consideration.

However, at this time, I will stay these actions for 60 days rather than dismiss them. If the West Virginia court grants the insurers' motions to dismiss, upon notice from any party, I will lift the stay, and these actions will be processed in an expeditious and economical manner in this Court. If the West Virginia court denies the motion or does not rule within 60 days of this Opinion, this federal Court will *sua sponte* dismiss these cases.

**510**

### Consolidation of Actions

Federal Rule of Civil Procedure 42(a) provides that "[w]hen actions involving a common question of law or fact are pending before the court, ... it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." St. Paul has moved for consolidation of its action with the Commercial Union action on the grounds that both involve the same defendant and the interpretation of insurance contracts as they pertain to the contaminated site in Saute Ste. Marie. Commercial Union has filed confirmation that it has no objections to consolidation. The only argument Cannelton has raised in opposition to consolidation is the claim that it would be premature to consolidate when the motion to dismiss the declaratory judgment actions is pending. Having determined that Cannelton's motion for discretionary dismissal or stay will be conditionally granted, I will consolidate the actions to permit the efficient, economical adjudication of this dispute.

An Order consistent with this Opinion will be entered.

### ORDER

In accordance with the Opinion entered this date,

**IT IS HEREBY ORDERED** that defendant Cannelton Industries, Inc.'s Motion for Discretionary Dismissal of the Declaratory Judgment Action; or, alternatively, for Stay of this Action Pending the Outcome of Parallel State Court Action (docket entry # 48) is GRANTED in part and DENIED in part. These actions will be stayed for sixty (60) days. If the West Virginia state court in which a parallel action is pending grants the insurers' motions to dismiss, upon notice from a party, this Court will lift the stay and retain these actions. If the West Virginia state court denies the insurers' motions to dismiss or fails to rule within sixty (60) days of this Order, this Court will *sua sponte* dismiss these cases.

**IT IS FURTHER ORDERED** that plaintiff St. Paul's Motion to Consolidate cases 2:92–cv–162 and 2:92–cv–111 (docket entry # 52) is GRANTED.